**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PAM CAHILL and CARL CAHILL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. N23C-10-205 JRJ |
| | ) | |
| STEVEN SANDERS and MELANIE | ) | |
| MCGAHA, | ) | |
| | ) | |
| Defendants. | ) | |

Date Submitted: July 8, 2024
Date Decided: July 25, 2024

## <u>ORDER</u>

Upon consideration of Defendants', Steven Sanders ("Sanders") and Melanie McGaha ("McGaha"), *Pro Se* Motion to Dismiss for Failure to State a Claim ("Motion"),[1] Plaintiffs', Pam Cahill ("Pam")[2] and Carl Cahill ("Cahill"), *Pro Se* Opposition to Defendants' Motion,[3] and the record in this case, **IT APPEARS THAT:**

(1)     This is a civil action arising from the soured relationship between a grandfather, Cahill, and his grandson, Sanders.[4]   Cahill used to reside with

---

[1] Defs.' Mot. to Dismiss, Trans. ID 73562829 (July 8, 2024) (hereinafter "Mot.").

[2] The Court uses Plaintiff's first name to distinguish her from Carl Cahill; no disrespect or familiarity is intended.

[3] Pls.' Mot. to Deny Defs.' Mot. to Dismiss, Trans. ID 73276897 (May 31, 2024) (hereinafter "Pls.' Opp'n").

[4] *See generally* Second Am. Compl., Trans. ID 73276464 (May 31, 2024).

Defendants in Delaware. In February 2022 Defendants were looking for a new house to better accommodate Cahill's disabilities.[5] Sanders informed Cahill that he did not have the money for a downpayment and that he needed $100,000.00 "in the bank" before he could purchase a new home.[6] The parties entered into a verbal agreement in which Cahill wrote a check for $100,000.00 and, in return, Sanders agreed to look for a suitable home.[7] Sanders deposited the check.[8]

(2) Cahill alleges that beginning March 6, 2022, Sanders became "verbally abusive, distant, and stopped looking at houses."[9] Sanders removed a/c vents from the ceiling and a portable heater from the room Cahill occupied, and as alleged, rented.[10] Cahill alleges that, at one point, Sanders took Cahill's cellphone before leaving the residence with McGaha and left him by himself.[11] Cahill was 88 years old at the time.[12]

---

[5] *Id.* ¶ 1.
[6] *Id.* ¶ 2.
[7] *Id.* ¶ 3.
[8] *Id.* ¶ 5.
[9] *Id.*
[10] *Id.* ¶ 6.
[11] *Id.*
[12] *Id.*

(3)     Cahill alleges that on or about May 10, 2022, Sanders "illegally evicted" Cahill.[13]  At this point, Cahill asked Sanders to return the $100,000.00 since the parties were no longer going to buy a house together.[14]  Sanders refused.[15]

(4)     On May 14, 2022, Cahill moved out of the shared residence and informed the Defendants that he would return on May 17th to gather the rest of his belongings.[16]  When Cahill returned to the residence, McGaha prevented him from retrieving the rest of his items.[17]

(5)     On October 25, 2023, Plaintiffs filed their first *Pro Se* Complaint with the Court.[18]  On December 21, 2023, Defendants filed their Answer denying all the allegations made in the Complaint.[19]

(6)     On March 7, 2024, the Court held a scheduling conference during which it directed Plaintiffs to file an amended complaint within 30 days of the hearing.[20]  Plaintiffs filed their first amended complaint on April 16, 2024.[21]  Then, on May 31, 2024, Plaintiffs filed a Second Amended Complaint ("Amended Complaint").[22]  Because Plaintiffs filed their Amended Complaint after Defendants

---

[13] *Id.* ¶ 7.
[14] *Id.*
[15] *Id.*
[16] *Id.* ¶ 9.
[17] *Id.* ¶ 10.  Cahill claims that a "Police Move Out" was required.  *Id.*
[18] Compl., Trans. ID 71185871 (Oct. 25, 2023).
[19] Defs.' Answer, Trans. ID 71675647 (Dec. 21, 2023).
[20] Judicial Action Form, Trans. ID 72331744 (Mar. 7, 2024).
[21] Am. Compl., Trans. ID 72758936 (Apr. 16, 2024).
[22] *See* Second Am. Compl.

had already filed their motion to dismiss,[23] the Court granted Defendants leave to file an amended motion to dismiss.[24] Defendants filed their Motion on July 8, 2024.[25]

(7) Defendants ask the Court to dismiss the Amended Complaint on the grounds that "plaintiffs have thrice tried and thrice failed to create a document which states a clear, concise and legally recognized CIVIL CLAIM."[26] Plaintiffs respond that "[t]he claims and violation codes are recognized by DE Law and Statute and are interpretable by an average layman."[27]

(8) Pursuant to Superior Court Rule 12(b)(6), the Court may dismiss an action for "failure to state a claim upon which relief can be granted[.]"[28] Upon a motion to dismiss, the Court (i) accepts all well-pled factual allegations as true, (ii) accepts even vague allegations as well-pled if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[29] The Court will "ignore

---

[23] Motion to Dismiss, Trans. ID 72759057 (Apr. 16, 2024).

[24] Court's Letter to Parties, Trans. ID 73426264 (June 18, 2024).

[25] Mot. The Court also granted Plaintiffs leave to file an amended response to the amended motion within 15 days of the amended motion being docketed. Plaintiffs did not file an amended response.

[26] Mot. (emphasis in original).

[27] Pls.' Opp'n ¶ 6.

[28] Super. Ct. Civ. R. 12(b)(6).

[29] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.3d 531, 536 (Del. 2011).

conclusory allegations that lack specific supporting factual allegations."[30]  In Delaware, the governing pleading standard is "reasonable conceivability,"[31] and the "petitioner [must] place the defendant on notice of the claims against him."[32]

(9)  The Court notes that all parties to the action are *pro se* litigants.  While the Court is willing to grant *pro se* litigants some leeway, "[t]here is no different set of rules for *pro se* plaintiffs," and the Court will not "sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff."[33] "[A]t a minimum, the pleading must be adequate so the Court may conduct a meaningful consideration of the merits of [the plaintiff's] claims."[34]

(10)  Plaintiffs in their Amended Complaint cite to three sections/chapters of the Delaware Code they allege Defendants violated.[35]

(11)  Plaintiffs first reference Title 31, Chapter 39 of the Delaware Code which concerns Adult Protective Services in relation to Welfare Agencies.[36] Plaintiffs allege that Defendants violated several subsections of Section 3913.[37]

---

[30] *Ramunno v. Cawley*, 705 A.2d 1029, 1034 (Del. 1998).
[31] *Central Mortg. Co.*, 27 A.3d at 537.
[32] *Boatswain v. Miller*, 2023 WL 6141312, at *3 (Del. Ch. Sept. 20, 2023).
[33] *Draper v. Med. Ctr. Of Delaware*, 767 A.2d 796, 799 (Del. 2001).
[34] *Harrison v. City or Town of Smyrna*, 2017 WL 5624306, at *1 (Del. Super. Nov. 16, 2017) (alterations in original) (quoting *Alston v. Dipasquale*, 2002 WL 77116, at *2 (Del. Super. Jan. 4, 2002)).
[35] *See generally* Second Am. Compl.
[36] *See* 31 *Del. C.* § 3901.
[37] Plaintiffs cite to Section 3902, but Section 3902 merely provides a list of definitions.  *See* 31 *Del. C.* § 3902.

Violations of Section 3913 are *criminal* violations.[38] This is a civil lawsuit and so Section 3913 is inapplicable.[39]

(12) Plaintiffs next cite to Title 25, Chapter 53 which governs Landlord Obligations and Tenant Remedies. Pursuant to 25 *Del. C.* § 5313, Plaintiffs allege that Defendants illegally evicted Cahill without a 60-day notice, "kept [the] balance of rent after eviction," excluded Cahill from the rented room, and refused to return his property.[40] Section 5313 states, "[i]f removed from the premises or excluded therefrom by the landlord or the landlord's agent, except under color of a valid court order authorizing such removal or exclusion, the tenant may recover possession or terminate the rental agreement."[41] The Court finds plaintiffs have stated a claim for which relief can be granted under Section 5313. *If* Plaintiffs can prove there was an enforceable rental agreement in place, and that Defendants were acting as landlords under Delaware law, then Plaintiffs *may* be entitled to relief under Section 5313. At the very least, Defendants are sufficiently on notice of this claim.[42]

---

[38] *See* 31 *Del. C.* § 3913 (listing both misdemeanor and felony violations).
[39] Plaintiffs also reference 11 *Del. C.* § 1451 in their Amended Complaint. Section 1451 is Theft of a Firearm, a Class F Felony. *See* 11 *Del. C.* § 1451. Again, this is a civil case, not a criminal prosecution. This section is likewise inapplicable.
[40] *See* Second Am. Compl. at 2.
[41] 25 *Del. C.* § 5313. If Plaintiffs prevail on this claim, they would be entitled to "treble the damages sustained or an amount equal to 3 times the *per diem* rent for the period of time the tenant was excluded from the unit, whichever is greater, and the costs of the suit excluding attorneys' fees." *Id.*
[42] *See Central Mortg. Co.*, 27 A.3d at 536 ("When considering a defendant's motion to dismiss, a trial court should accept all well-pleaded factual allegations in the Complaint as true, [and] accept even vague allegations in the Complaint as 'well-pleaded' if they provide the defendant notice of the claim . . .. Indeed, it may, as a factual matter, ultimately prove impossible for the plaintiff to

(13) Plaintiffs seek some sort of Court redress concerning the $100,000.00 payment that Cahill made to Sanders,[43] but none of Plaintiffs' three complaints properly plead a civil cause of action related to the $100,000.00. To the extent Plaintiffs are attempting to allege some sort of fraud claim, that claim fails because fraud must be pled with particularity.[44]

**THEREFORE, IT IS HEREBY ORDERED** that Defendants' *Pro Se* Motion to Dismiss is **DENIED IN PART** and **GRANTED IN PART**. Plaintiffs' claim as it relates to an unlawful eviction remains, the remaining claims in the Amended Complaint are dismissed.

**IT IS SO ORDERED**.

/s/ Jan R. Jurden

Jan R. Jurden, President Judge

Original to Prothonotary

cc:    Pam Cahill and Carl Cahill, *pro se*
       Steven Sanders and Melanie McGaha, *pro se*

---

prove his claims at a later stage of a proceeding, but that is not the test to survive a motion to dismiss.").

[43] *See* Second Am. Compl. ("Plaintiff(s) seek to made whole again, pray for and seek general relief by the Defendant(s) returning the $100,000.00 plus interest . . .").

[44] *See* Super. Ct. Civ. R. 9; *Mikkilineni v. PayPal, Inc.*, 2021 WL 2763903, at *9 n. 89 (Del. Super. July 1, 2021) ("Rule 9(b)'s heightened pleading standard applies to all litigants, even *pro se* ones."); *see also Maddox v. CitiMortgage, Inc.*, 2014 WL 1155312, at *2 (Del. Super. Feb. 28, 2014) ("When the Court gave Plaintiff an opportunity to amend his complaint to better describe his claims, Plaintiff again failed to allege his fraud claim with particularity. While the Court may grant *pro se* litigants reasonable accommodations where possible based on their lack of familiarity with the law, procedural requirements will not be relaxed.").